867 P.2d 1231

**STATE of New Mexico,**
**Plaintiff–Appellee,**

v.

**Lather LEWIS, Defendant–Appellant.**

No. 13761.

Court of Appeals of New Mexico.

Dec. 23, 1993.

Tom Udall, Atty. Gen., Gerald Velarde, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Sammy J. Quintana, Chief Public Defender, Leonard J. Foster, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

*OPINION*

BLACK, Judge.

Defendant appeals from convictions of armed robbery and conspiracy to commit

armed robbery. Defendant raises the following issues: (1) whether the trial court erred in denying his motion for a directed verdict; (2) whether the trial court erred in refusing to suppress an in-court identification; (3) whether Defendant was denied due process and equal protection; (4) whether the trial court erred when it admitted certain testimony; and (5) whether the trial court erred in imposing a firearm enhancement. We reverse on the directed verdict issue, and, since that issue is dispositive of this appeal, we do not reach the merits of the remaining issues.

## FACTS

The robbery victim testified that he was visiting Albuquerque to conduct business, visit friends, and see his former girlfriend. During his visit to the city, the victim met a prostitute who agreed to have sex with him. The victim and prostitute arranged to meet in a specific motel room. The victim described the motel room as having a front room that was connected to a back bedroom. There was a light on in the front room, and some of that light came into the back bedroom.

The prostitute instructed the victim to remove his clothing. The victim did so and laid his clothing on a chair in the front room and then folded his coat and placed it over his clothing. The victim testified that he had between $1500 and $1600 in his coat pocket, and that, when he laid his coat over his clothing, he did so in a manner such that he would recognize if anyone had moved it.

The victim and prostitute proceeded to the back bedroom where they engaged in sexual intercourse. While so engaged, the victim heard noises that the prostitute said were probably the neighbors. After intercourse, the prostitute went into the front room and the victim lay in bed for a few minutes. When he got up and went into the front room to get dressed, the victim noticed that his coat was not in the same position as he had left it. With his back to the prostitute, the victim looked into his wallet and noticed that his money was missing. When he turned around, the prostitute was pointing a gun at him.

The victim testified that at that point a man came out from the back bedroom and the prostitute handed the gun to the man. The couple then ordered the victim out of the motel room, but the victim demanded the return of his money. The three left the room, and, as the couple entered a vehicle, the victim grabbed hold of the vehicle and continued to demand the return of his money. The victim held onto the car as the couple, driving erratically to try to shake the victim loose, left the scene. The victim finally jumped from the car and eventually located a police officer to whom he gave an account of the incident as well as a description of the man.

## ISSUE

■ Defendant argues that the trial court erred in denying his motion for a directed verdict because the evidence was insufficient to convict him of armed robbery. In analyzing sufficiency of the evidence issues, the inquiry is whether substantial evidence exists to support a verdict of guilty beyond a reasonable doubt with respect to each essential element of a crime charged. *State v. Duran*, 107 N.M. 603, 605, 762 P.2d 890, 892 (1988). Specifically, Defendant argues that the evidence revealed that the money was taken from the victim by stealth when the victim was not present, and that the only alleged use of force was during the escape. Defendant argues robbery can be committed only when force or intimidation is used as the method of requiring the victim to relinquish his property.

A review of the facts of this case reveals that the victim's property was removed from his clothing either during the time when he was engaging in sex or immediately thereafter when he was lying in bed. Therefore, the money already had been taken when the victim noticed it was missing. When the victim turned to confront the prostitute about the missing money, she was pointing a gun at him and only then did Defendant enter the room. These facts present the Court with the question of whether Defendant's forceful and intimidating actions with the gun, after the victim's money had already been taken

through the use of stealth, are sufficient to sustain a robbery conviction. In other words, the question we are faced with is whether the use, or threatened use, of force must necessarily be concurrent with the taking of the property from the victim.

## DISCUSSION

■ The use of force, violence, or intimidation is an essential element of robbery. 4 *Wharton's Criminal Law* § 474, at 52–54 (Charles E. Torcia ed., 14th ed. 1981); 2 Wayne R. LaFave & Austin W. Scott, Jr., *Substantive Criminal Law* § 8.11(d), at 445 (1986). Historically, the difference between larceny and robbery has turned on whether and when force was used. Rollin M. Perkins & Ronald N. Boyce, *Criminal Law*, Ch. 4, § 2, pt. C, at 347–49 (3rd ed. 1982). Blackstone said, "if one privately steals sixpence from the person of another, and afterwards keeps it by putting him in fear, this is no robbery, for the fear is subsequent ..." 4 William Blackstone, *Commentaries* *242, *as quoted in* Perkins & Boyce, *supra*, at 348.

■ In New Mexico, "[r]obbery consists of the theft of anything of value from the person of another or from the immediate control of another, by use or threatened use of force or violence." NMSA 1978, § 30–16–2 (Repl. Pamp.1984). New Mexico case law makes it clear that, in order to convict for such an offense, the use or threatened use of force must be the factor by which the property is removed from the victim's possession. *State v. Sanchez*, 78 N.M. 284, 285, 430 P.2d 781, 782 (Ct.App.1967). For example, a defendant who picks a victim's pocket in New Mexico is not guilty of robbery because "force or fear must be the moving cause inducing the victim to part unwillingly with his property." *Id.; cf. State v. Clokey*, 89 N.M. 453, 553 P.2d 1260 (1976) (holding that the snatching of a victim's purse was accompanied by sufficient force to create a question of fact for the jury).

In *State v. Baca*, 83 N.M. 184, 489 P.2d 1182 (Ct.App.1971), this Court recognized that the use or threatened use of force must be the lever by which the property is sepa-

rated from the victim or immediate control of another. The defendant in *Baca* ordered a beer at a bar. As the employee began to ring up the purchase, defendant jumped over the counter with a knife. A scuffle ensued and the defendant was subdued but eventually released. After the defendant left it was discovered that " 'about $275.00' " was missing from the cash register. The district court denied the defendant's motion for directed verdict and defendant was convicted. This Court reversed, noting there was no proof that force or fear was the motivating cause inducing the employee to part with the money in the cash register. *Id.* at 185, 489 P.2d at 1183.

The State cites *State v. Martinez*, 85 N.M. 468, 513 P.2d 402 (Ct.App.1973), to support the argument that the separation of property from the victim can include any immediate efforts by the accused to retain or recapture the property. However, *Martinez* is distinguishable from the case at bar. In *Martinez*, this Court determined that the defendant's actions of ripping the victim's pocket and knocking the victim against a railing in order to obtain the money were sufficient evidence of force for a robbery conviction. Force was in fact the lever by which the property was separated from the victim in *Martinez*, and, therefore, the State's reliance on that case is misplaced. *Cf. Sanchez*, 78 N.M. at 285, 430 P.2d at 782 (force not the lever).

■ Under the facts of the present case, the victim's money was removed and separated from his person by stealth. Defendant clearly had control over the victim's money once it had been taken from his clothing. Defendant's use of a weapon only after the money was separated from the victim was merely an action to hold victim at bay as he escaped from the motel. For that action, it appears that Defendant could have been charged with aggravated assault. *See generally* NMSA 1978, § 30–3–2(A) (Repl. Pamp.1984). However, based on the wording of Section 30–16–2 and our cases interpreting that statute, the use of force to retain property or to facilitate escape does not satisfy

the force element necessary for the crime of robbery. Thus, there was insufficient evidence to support Defendant's conviction for armed robbery.

It is true, as the State argues, that other jurisdictions have interpreted different statutory language to sustain robbery convictions when the force is used after the removal of the property. The cases diverge based largely on the relevant statutory language defining robbery. Indeed, some of these jurisdictions have statutes which specifically define robbery to include the use of force to retain property immediately after it has been taken. *See generally* Kristine C. Karnezis, Annotation, *Use of Force or Intimidation in Retaining Property or in Attempting to Escape, Rather Than in Taking Property, as Element of Robbery,* 93 A.L.R.3d 643 (1979). The Model Penal Code takes this approach by defining robbery to include any violence or fear threatened or inflicted during an attempt or commission of a theft or in flight after an attempt or commission of theft. Karnezis, *supra* § 4[b] at 652.

Thus, while it may be true that "modern code" sections define robbery to allow any use of force during or after a taking of the property, 1 Paul H. Robinson, *Criminal Law Defenses* § 109(n) (1984), it is up to the legislature, not the courts, to revise the statutory definition of robbery. *Compare State v. Elmquist,* 114 N.M. 551, 844 P.2d 131 (Ct. App.1992) (interpreting ambiguous criminal statute defining the crime of "shooting at an inhabited dwelling" to require knowledge on the part of the defendant that the dwelling was inhabited) *with* NMSA 1978, § 30–3–8 (Cum.Supp.1993) (specifically amending previously ambiguous statute to require only reckless disregard on the part of a defendant as to whether a dwelling is inhabited).

We do recognize, however, that some jurisdictions have interpreted robbery statutes similar to our own to encompass situations where force is used to retain property immediately after its nonviolent taking. *See, e.g., Cantrell v. State,* 184 Ga.App. 384, 361 S.E.2d 689, 690 (1987). The State argues that this view is "not inconsistent" with New Mexico case law, and that, by virtue of the "carrying away" element of SCRA 1986, 14–1621 (setting out the essential elements of armed robbery), robbery is a continuing offense in New Mexico and force used to retain property or to effect an escape is sufficient to satisfy the force element. We disagree. Regardless of whether robbery is a continuing offense, New Mexico case law clearly holds that force must be the lever by which property is separated from the victim, *Sanchez,* 78 N.M. at 285, 430 P.2d at 782; *Baca,* 83 N.M. at 184, 489 P.2d at 1182, and thus the use of force subsequent to that separation is not sufficient.

## CONCLUSION

Based on the above, we hold that the trial court erred in denying Defendant's motion for a directed verdict. Accordingly, we reverse.

IT IS SO ORDERED.

PICKARD and FLORES, JJ., concur.