1997-NMCA-038

939 P.2d 1103

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Erwin CURLEY, Defendant–Appellant.**

No. 16788.

Court of Appeals of New Mexico.

April 10, 1997.

Tom Udall, Attorney General, Steven S. Suttle, Asst. Attorney General, Santa Fe, for Plaintiff–Appellee.

T. Glenn Ellington, Chief Public Defender, Bruce Rogoff, Appellate Defender, Santa Fe, for Defendant–Appellant.

## OPINION

PICKARD, Judge.

1. This case requires us to determine: (1) what force suffices to turn a larceny into a robbery and (2) whether there is any view of the evidence pursuant to which that force was not shown. We removed the case from our expedited-bench-decision program because of the importance of the issues involved. *See Gracia v. Bittner,* 120 N.M. 191, 192, 900 P.2d 351, 352 (Ct.App.1995); *In the Matter of the Court of Appeals Caseload,* No. 1–21, ¶¶ 4(c) & 6 (Filed Oct. 17, 1995) [attached hereto as an appendix].

2. Defendant appeals his conviction for robbery, contending that the trial court erred in refusing to give his requested lesser-included-offense instructions for larceny. We hold that the amount of force required for robbery when property is attached to the person is that force, regardless of the amount, that is necessary to remove the attached property when either the person or the strength of attachment does not cause resistance. Because there is a legitimate view of the evidence in this case pursuant to which a jury could have found that the only force present was no more force than was necessary to remove property from a person who does not resist, we reverse and remand for a new trial.

3. The prosecution arose out of a purse snatching. The evidence was that the victim was walking out of a mall with her daughter when Defendant grabbed her purse and ran away. The victim described the incident as follow: "I had my purse on my left side . . . and I felt kind of a shove of my left shoulder where I had my purse strap with my thumb through it and I kind of leaned—was pushed—toward my daughter, and this person came and just grabbed the strap of my purse and continued to run." The victim used the words "grab" or "pull" to describe the actual taking of the purse and "shove" or "push" to describe what Defendant did as he grabbed or "pulled [the purse] from her arm and hand." However, there was also evidence that the victim's thumb was not through the strap of the purse, but was rather on the bottom of the purse. The purse strap was not broken, and the victim did not testify that she struggled with Defendant for the purse in any way or that any part of her body offered any resistance or even moved when the purse was pulled from her arm and hand. Defendant presented evidence that he was drunk and did not remember the incident at all.

4. Robbery is theft by the use or threatened use of force or violence. NMSA 1978, § 30–16–2 (Repl.Pamp.1994). Because the words "or violence" refer to the unwarranted exercise of force and do not substantively state an alternative means of committing the offense, *see State v. Fuentes,* 119 N.M. 104, 107–08, 888 P.2d 986, 989–90 (Ct. App.1994), *cert. denied,* 119 N.M. 168, 889 P.2d 203 (1995), we refer simply to "force" in this opinion. The force must be the lever by which the property is taken. *State v. Lewis,* 116 N.M. 849, 851, 867 P.2d 1231, 1233 (Ct. App.1993); *State v. Baca,* 83 N.M. 184, 489 P.2d 1182 (Ct.App.1971). Although we have cases saying in dictum that even a slight amount of force, such as jostling the victim or snatching away the property, is sufficient, *see State v. Martinez,* 85 N.M. 468, 469, 513 P.2d 402, 403 (Ct.App.1973), we also have cases in which a taking of property from the person of a victim has been held not to be robbery, *see State v. Sanchez,* 78 N.M. 284, 285, 430 P.2d 781, 782 (Ct.App.1967) (wallet taken from victim's pocket while victim was aware that the defendant was taking the wallet).

5. A defendant is entitled to a lesser-included-offense instruction when there is some evidence to support it. *See State v. Duran,* 80 N.M. 406, 407, 456 P.2d 880, 881 (Ct.App.1969); *see also State v. Vallejos,* 122 N.M. 318, 324–25, 924 P.2d 727, 733–34 (Ct. App.1996) (collecting cases and stating standard of review for giving defense-requested instructions), *cert. granted,* 122 N.M. 112, 921 P.2d 308 (1996). There must be some view of the evidence pursuant to which the lesser offense is the highest degree of crime committed, and that view must be reasonable. *See State v. Pisio,* 119 N.M. 252, 259, 889 P.2d 860, 867 (Ct.App.1994), *certs. denied,* 119 N.M. 20, 888 P.2d 466 (1995). Thus, in this case, to justify giving Defendant's larceny instruction, there must be some view of the evidence pursuant to which force sufficient to constitute a robbery was not the lever by which Defendant removed the victim's purse.

6. Defendant contends that such evidence exists in that the jury could have found that Defendant's shoving of the victim was part of his drunkenness, and then the purse was taken without force sufficient to constitute robbery. We agree. We are persuaded by an analysis of our own cases, as well as cases from other jurisdictions, that the applicable rule in this case is as follows: when property is attached to the person or clothing of a victim so as to cause resistance, any taking is a robbery, and not larceny, because the lever that causes the victim to part with the property is the force that is applied to break that resistance; however, when no more force is used than would be necessary to remove property from a person who does not resist, then the offense is larceny, and not robbery.

7. In our cases where we have not found sufficient force to be involved, the victim did not resist the property being taken from his person. *See, e.g., Sanchez,* 78 N.M. at 285, 430 P.2d at 782 (defendant took wallet from victim's pants, but force was not lever by which wallet was taken); *see also State v. Aldershof,* 220 Kan. 798, 556 P.2d 371, 372, 376 (1976) (purse lifted from victim's lap while she sat at a table). On the other hand, the evidence of a snatching of a purse was sufficient to establish robbery in *State v. Clokey,* 89 N.M. 453, 553 P.2d 1260 (1976), but the issue in that case was not whether there was evidence justifying a lesser-included-offense instruction.

8. The general rule from other jurisdictions is stated in 4 Charles E. Torcia, *Wharton's Criminal Law* Section 465, at 47–49 (15th ed. 1996)—that a mere snatching of property from a victim is not robbery unless the property is attached to the person or clothes of the owner so as to afford resistance. *See McClendon v. State,* 319 P.2d 333, 335 (Okla.Crim.App.1957). A minority position is represented by the analysis in *Commonwealth v. Jones,* 362 Mass. 83, 283 N.E.2d 840, 844 (1972). There, the court held that the values sought to be protected by the crime of robbery, as opposed to larceny, are equally present when any property is taken from a person as long as that person is aware of the application of force which relieves the person of property and the taking is therefore, at least to some degree, against the victim's will. *See also Commonwealth v. Ahart,* 37 Mass.App.Ct. 565, 641 N.E.2d 127, 131 (the snatching of a purse necessarily involves the use of force), *certs. denied,* 419 Mass. 1101, 644 N.E.2d 225 (1994).

9. The minority rule adopted by Massachusetts, however, appears inconsistent with our earlier cases. Pursuant to the Massachusetts rule, any purse snatching not accomplished by stealth would be robbery. We are not inclined to overrule cases such as *Sanchez,* in which we held that the taking of a wallet accompanied by just so much force as is necessary to accomplish the taking from a person who was not resisting was not robbery. Rather, we adhere to what we perceive to be the majority rule.

10. According to the majority rule, robbery is committed when attached property is snatched or grabbed by sufficient force so as to overcome the resistance of attachment. In cases such as this one, where one view of the facts appears to put the case on the border between robbery and larceny, it is necessary to further explore what is meant by the concept of "the resistance of attachment." Our exploration is informed by the interests protected by the two crimes.

11. In *Fuentes,* 119 N.M. at 106, 108, 888 P.2d at 988, 990, we said that robbery is a crime "primarily" directed at protecting property interests. That statement, however, was made in the context of contrasting the crime of robbery with the crime of assault, which is directed exclusively toward protecting persons. In this case, contrasting the crime of robbery with the crime of larceny, we could similarly say that robbery is directed "primarily" at protecting persons inasmuch as larceny is directed exclusively at protecting property interests. In truth, it is probably inaccurate to say that the crime of robbery is directed "primarily" at either personal or property interests. That is because it is directed at both interests. *See* Torcia, *supra,* § 454 at 5 ("By definition, then, robbery may be classified not only as an offense against property but also as an offense against the person."). It is the aspect of the offense that is directed against the person which distinguishes the crime of robbery from larceny and also justifies an increased punishment. *See* W. LaFave & A. Scott, Jr., *Substantive Criminal Law* § 8.11 at 437 (2d ed. 1986). Thus, "the resistance of attachment" should be construed in light of the idea that robbery is an offense against the person, and something about that offense should reflect the increased danger to the person that robbery involves over the offense of larceny.

12. LaFave and Scott state:

The great weight of authority, however, supports the view that there is not sufficient force to constitute robbery when the thief snatches property from the owner's grasp so suddenly that the owner cannot offer any resistance to the taking. On the other hand, when the owner, aware of an impending snatching, resists it, or when, the thief's first attempt being ineffective to separate the owner from his property, a struggle for the property is necessary before the thief can get possession thereof, there is enough force to make the taking robbery. Taking the owner's property by stealthily picking his pocket is not taking by force and so is not robbery; but if the pickpocket or his confederate jostles the owner, or if the owner, catching the pickpocket in the act, struggles unsuccessfully to keep possession, the pickpocket's crime becomes robbery. To remove an article of value, attached to the owner's person or clothing, by a sudden snatching or by stealth is not robbery unless the article in question (e.g., an earring, pin or watch) is so attached to the person or his clothes as to require some force to effect its removal.

LaFave & Scott, *supra,* § 8.11(d)(1) at 445–46. Thus, it would be robbery, not larceny, if the resistance afforded is the wearing of a necklace around one's neck that is broken by the force used to remove it and the person to whom the necklace is attached is aware that it is being ripped from her neck. *See People v. Taylor,* 129 Ill.2d 80, 133 Ill.Dec. 466, 541 N.E.2d 677, 679 (1989). On the other hand, it would be larceny, not robbery, if the resistance afforded is the wearing of a bracelet, attached by a thread, and the person to whom the bracelet is attached is not aware that it is being taken until she realizes that it is gone. *See S.W. v. State,* 513 So.2d 1088 (Fla.Dist.Ct.App.1987).

13. While the difference between *Taylor* and *S.W.* might appear to be the amount of force necessary to break the necklace or string, respectively, that is not how we distinguish the cases. Subtle differences in the amount of force used, alone, is neither a clear nor reasonable basis to distinguish the crime of robbery from that of larceny. However, if we remember that the reason for the distinction in crimes is the increased danger to the person, then an increase in force that makes the victim aware that her body is resisting could lead to the dangers that the crime of robbery was designed to alleviate. A person who did not know that a bracelet was being taken from her wrist by the breaking of a string would have no occasion to confront the thief, thereby possibly leading to an altercation. A person who knows that a necklace is being ripped from her neck might well confront the thief. As stated in the Florida cases, the law is well settled that snatching a purse or picking a pocket is " 'not robbery if no more force or violence is used than is necessary to remove the property from a person who does not resist.'" *S.W.,* 513 So.2d at 1091 (quoting various cases).

14. We now apply these rules to the facts of this case. Although the facts in this case are simply stated, they are rich with conflicting inferences. Either robbery or larceny may be shown, depending on the jury's view of the facts and which inferences it chooses to draw.

15. In the light most favorable to the State, Defendant shoved the victim to help himself relieve her of the purse, and the shove and Defendant's other force in grabbing the purse had that effect. This view of the facts establishes robbery, and if the jury believed it, the jury would be bound to find Defendant guilty of robbery. *See Martinez,* 85 N.M. at 469, 513 P.2d at 403.

16. However, there is another view of the facts. Defendant contends that the evidence that he was drunk allows the jury to infer that the shove was unintentional and that the remaining facts show the mere snatching of the purse, thereby establishing larceny. Two issues are raised by this contention that we must address: (1) is there a reasonable view of the evidence pursuant to which the shove was not part of the robbery? and (2) even disregarding the shove, does the remaining evidence show only robbery?

17. We agree with Defendant that the jury could have inferred that the shove was an incidental touching due to Defendant's drunkenness. Defendant's testimony of his drunkenness and the lack of any testimony by the victim or any witness that the shove was necessarily a part of the robbery permitted the jury to draw this inference. Once the jury drew the inference that the shove was independent of the robbery, the jury could have found that Defendant formed the intent to take the victim's purse after incidentally colliding with her. Alternatively, the jury could have found that Defendant intended to snatch the purse without contacting the victim and that the contact (the shove) was not necessary to, or even a part of, the force that separated the victim from her purse. The victim's testimony (that she felt "kind of a shove" and then Defendant grabbed her purse) would allow this inference. Thus, the jury could have found that the shove did not necessarily create a robbery.

18. The question would then remain, however, whether the grabbing of the purse was still robbery because more force was used than would have been necessary to remove the purse if the victim had not resisted. Under the facts of this case, in which the victim did not testify that she held the strap tightly enough to resist and in which there was some evidence that she was not even holding the strap, we think that there was a legitimate, reasonable view of the evidence that, once the shove is eliminated from consideration, Defendant used only such force as was necessary to remove the purse from a person who was not resisting. Under this view of the facts, Defendant took the purse by surprise from a person who was not resisting, and not by force necessary to overcome any resistance. Therefore, the trial court should have given Defendant's tendered larceny instructions.

■ 19. The State makes one final argument. It contends that Defendant's issue was not properly preserved because Defendant did not make an argument to the district court alerting it to the exact grounds for the requested instructions. Such an argument need not be made in the case of a failure to instruct. NMRA 1997, 5–608(D) requires objection sufficient to alert the trial court to the error in the case of objections to the instructions given. The rule continues: "or, in case of failure to instruct on any issue, a correct written instruction must be tendered." The issue in this case is a failure to instruct, and the State concedes that Defendant tendered correct written instructions. Moreover, the issue was brought to the trial court's attention inasmuch as the record reflects that the trial court denied the instructions and noted his initials on them. This was sufficient to preserve the issue. *See State v. Diaz,* 121 N.M. 28, 30, 908 P.2d 258, 260 (Ct.App.) (holding that there are three requisites for demonstrating error in failing to give lesser-included-offense instructions: (1) offense must be included; (2) evidence must support it; and (3) appropriate instructions must be tendered (no mention of additional requirement of argument)), *cert. denied,* 120 N.M. 828, 907 P.2d 1009 (1995).

**300**

20. Accordingly, Defendant's conviction is reversed and remanded for a new trial.

21. IT IS SO ORDERED.

MINZNER and WECHSLER, JJ., concur.

APPENDIX

IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

IN THE MATTER OF THE COURT OF APPEALS CASELOAD.

No. 1–21.

Filed Oct. 17, 1995.

*ORDER*

This matter having come before the Court upon the Court's evaluation of the expedited bench decision program initiated by Order No. 1–19 in March of 1993 and expanded at the end of 1993, and the Court being of the opinion that the program has outgrown the order adopting it, but that the program should be continued and expanded, and therefore that Order No. 1–19 should be modified,

IT IS THEREFORE ORDERED THAT:

1. The Court of Appeals may, at its option, assign any case on its docket to the expedited bench decision program at the time of calendaring a case to the general or legal calendar, or the parties or one of them may move for assignment of a case to the expedited bench decision program at any time.

2. Parties may file written objections, specifying in detail their objections to their case being assigned to the expedited bench decision program. However, the decision as to whether the case shall remain in the program shall be made by the Court of Appeals.

3. The following guidelines shall control preparation of cases assigned to the expedited bench decision program and scheduling of them for argument, to the extent that the guidelines apply given the timing of the assignment of the case to the program:

a. Transcript and exhibit preparation and filing shall be in accordance with the usual Rules of Appellate Procedure;

b. Briefing shall be in accordance with the usual Rules of Appellate Procedure, except that, absent permission from the Court, the parties shall take only 20, rather than 30 days, for completion of major briefs, and that the parties shall limit their briefs to 20, rather than 35, pages for major briefs and 10 pages for reply briefs; and

c. The case shall be expedited and shall be submitted to a panel of judges for decision at the Court's next available submission date. Oral argument shall be scheduled as a matter of course at the next argument calendar after submission.

4. The following guidelines shall govern argument and decision in cases assigned to the expedited bench decision program:

a. Argument shall be before a panel of three judges of the Court of Appeals or two judges of the Court of Appeals and one justice of the Supreme Court.

b. The panel shall decide the case from the bench, either immediately after the argument or after a short recess if appropriate. By agreement of the panel, one of the judges of the Court of Appeals may be selected to orally state the reasons for the decision if the decision is made from the bench or write a brief decision explaining the panel's disposition and rationale or both. The written decision (which may be an edited transcript of the oral decision), including any concurrences or dissents, is expected to be filed on or before 5:00 p.m. on the next business day following the argument, and in no event shall it be filed later than seven days after the argument unless pursuant to paragraph 6 below.

c. In most cases in this program, it is anticipated that the case will be decided by decision which will not be considered of any precedential value for any other case. However, in appropriate cases, the panel may issue formal opinions that will be of precedential value.

d. In all cases that are remanded for retrial or further proceedings, the explanation of the Court's decision will be suffi-

ciently detailed for the guidance of the trial court and counsel.

e. In the event that a majority of the panel cannot agree as to the disposition of the case, the case will be promptly removed from the expedited bench decision program.

5. The parties will retain their rights to seek rehearing and certiorari. If a Supreme Court justice has participated in the decision, he or she shall not participate in the proceedings on certiorari.

6. Notwithstanding the requirements of paragraph 4, in the event one member of the panel feels strongly that additional time is needed in order to render a reasoned decision, the time constraints set forth above may be expanded, provided, however, the case shall be given the highest priority and a decision rendered at the earliest possible date.

/s/ Rudy s. Apodaca
, Chief Judge

/s/ Thomas A. Donnelly
/s/ THOMAS A. DONNELLY, Judge

/s/ A. Joseph Alarid
/s/ A. JOSEPH ALARID, Judge

/s/ Harris L. Hartz
/s/ HARRIS L. HARTZ, Judge

/s/ Lynn Picard
/s/ LYNN PICARD, Judge

/s/ Bruce D. Black
/s/ BRUCE D. BLACK, Judge

/s/ Benny E. Flores
/s/ BENNY E. FLORES, Judge

/s/ Richard C. Bosson
/s/ RICHARD C. BOSSON, Judge

/s/ James J. Wechsler
/s/ JAMES J. WECHSLER, Judge

/s/ Michael D. Bustamante
/s/ MICHAEL D. BUSTA-MANTE, Judge

Approved:

/s/ Joseph F. Baca
/s/ JOSEPH F. BACA, Chief Justice