6 P.3d 1043

2000-NMCA-063

**STATE of New Mexico,**
**Plaintiff–Appellee,**

v.

**Anthony HAMILTON, Defendant–**
**Appellant.**

**No. 20,151.**

Court of Appeals of New Mexico.

June 5, 2000.

Certiorari Denied, No. 26,308,
May 24, 2000.

Certiorari Denied, No. 26,403,
July 24, 2000.

Patricia A. Madrid, Attorney General, M. Victoria Wilson, Assistant Attorney General, Santa Fe, for Appellee.

Phyllis H. Subin, Chief Public Defender, Nancy M. Hewitt, Assistant Appellate Defender, Santa Fe, for Appellant.

## OPINION

BUSTAMANTE, Judge.

{1} On this Court's own motion, the opinion filed in this case on April 7, 2000, is withdrawn and the following is substituted therefor.

{2} Defendant was convicted of aggravated burglary, aggravated assault, armed robbery, and felon in possession of a firearm following his arrest and trial in connection with the break-in of a home in Roswell, New Mexico, in March 1998. On appeal, he argues that the armed robbery conviction should be reversed because, although he took a handgun from the victim, there was no evidence that Defendant was armed when he made the threats that acted as the lever whereby he obtained the gun and some money from the victim. He also argues that the trial court improperly admitted evidence of other bad acts purportedly committed by Defendant on the same day as the robbery of the victim's home and that there was insufficient evidence to support his convictions on the other charges. We affirm.

## FACTS

{3} Shortly after 6:00 p.m. on March 23, 1998, Shauna Means, who was home alone at the time, heard a knock at her door. Before Means was able to answer, Defendant, with whom Means was acquainted, kicked in Means's door and entered her home. Means testified that after Defendant entered her home, he reached behind his back and threatened to slash her throat if she tried to run. Defendant told Means he wanted weapons and money. Means responded that she had neither, but Defendant began to search the home anyway. Initially, Means began following Defendant around the home, but because she was afraid she returned to the living room and sat on the couch as Defendant continued to search.

{4} Defendant soon found a handgun belonging to Means's boyfriend. After finding the handgun, Defendant told Means to give him all of her money. She again told Defendant that she did not have any money, but Defendant reached in Means's purse and found a twenty dollar bill, which he took. Next, Defendant pointed the gun at Means's abdomen then moved the gun quickly to one side and fired, narrowly missing Means but putting a hole in the couch. Before leaving, Defendant threatened to return.

{5} Defendant was first tried on the charges on September 1, 1998. Because the jury was unable to reach a unanimous verdict, the trial court declared a mistrial. During the first trial, Defendant testified that he entered Means's home with the intent to collect money owed to him, not with the intent to steal anything. Recognizing the necessity to provide proof of Defendant's criminal intent, the State filed a motion in limine seeking to have the trial court allow it to introduce evidence at the second trial of burglaries Defendant was alleged to have been involved in on the day of, but prior to, the robbery of Means's home.

{6} In support of its motion, the State argued that the evidence would help to show Defendant's motive or intent and should therefore be admitted under Rule 11–404(B) NMRA 2000. The State also argued that it was only seeking to introduce evidence of the events of one day in Defendant's life, which it suggested would not paint Defendant as a bad character generally, but would instead give the jury insight into Defendant's state of mind on the day of the robbery. Indeed, some of the evidence the State sought to introduce was allowed as evidence at the first trial to rebut Defendant's testimony that he had no intent to rob anybody but instead was seeking to collect on some debts. The trial court agreed with the State that the evidence

demonstrated Defendant's motive or intent and ruled it admissible.

## DISCUSSION

*Acquisition of a Deadly Weapon During the Commission of a Robbery as Armed Robbery*

{7}   Count Three of the Amended Criminal Information charged Defendant with stealing "items of value from the immediate control of Shauna Means by the use or threatened use of force or violence *while armed with a deadly weapon, namely a firearm,* contrary to NMSA 1978, [§ ] 30–16–2 [ (1973) ]." (Emphasis added.)   Defendant argues, however, that he cannot be guilty of armed robbery "because the evidence shows that [he] allegedly took the gun and money *before* any use of force or any threatened use of force while armed with a deadly weapon." In other words, Defendant is arguing that there is no evidence he was armed while using the force or threatening to use the force that caused Means to part with the handgun and money.   Defendant frames his argument as a challenge to the sufficiency of the evidence, but because there is evidence that Defendant armed himself during the course of the robbery, we understand his argument to be more legal than factual. That is, we understand him essentially to be arguing that, as a matter of law, one cannot be guilty of armed robbery if not armed while using or threatening to use the force that initially causes the victim to part with her property, even if the robber subsequently becomes armed and uses the weapon during the course of the robbery.   We review legal questions de novo. *See State v. Rowell,* 121 N.M. 111, 114, 908 P.2d 1379, 1382 (1995).

{8}   Section 30–16–2 provides:

Robbery consists of the theft of anything of value from the person of another or from the immediate control of another, by use or threatened use of force or violence.

Whoever commits robbery is guilty of a third degree felony.

Whoever commits robbery while armed with a deadly weapon is, for the first offense, guilty of a second degree felony and, for second and subsequent offenses, is guilty of a first degree felony.

"[I]n order to convict for [robbery], the use or threatened use of force must be the factor by which the property is removed from the victim's possession." *State v. Lewis,* 116 N.M. 849, 851, 867 P.2d 1231, 1233 (Ct.App. 1993).   Or as this Court has stated on several occasions, the force or threatened use of force must be the lever that serves to separate the property from the victim. *See id.; State v. Curley,* 1997–NMCA–038, ¶ 4, 123 N.M. 295, 939 P.2d 1103; *State v. Baca,* 83 N.M. 184, 184, 489 P.2d 1182, 1182 (Ct.App. 1971). Thus, "[t]he force or intimidation is the gist of the offense." *State v. Sanchez,* 78 N.M. 284, 285, 430 P.2d 781, 782 (Ct.App. 1967).

{9}   Here, Means testified that she was frightened by Defendant kicking in the door and threatening to slash her throat before demanding weapons and money and searching her home.   Although there is no evidence that Defendant was armed when he entered and threatened Means, there is no question that his forcible entry and threat were sufficient to act as a lever to separate the handgun from Means's possession, and thus to convict Defendant of robbery. *See State v. Ibarra,* 116 N.M. 486, 490, 864 P.2d 302, 306 (Ct.App.1993).   The question is whether brandishing the handgun while taking money from Means's purse can serve to elevate Defendant's offense from simple robbery to armed robbery.   We conclude that it can.

{10}   We have found only a handful of cases from other jurisdictions discussing this issue, and among those the conclusions vary. Some of the cases hold that where the defendant acquires a weapon as part of the loot but immediately flees the scene, it is improper to convict of armed or aggravated robbery. *See Caine v. State,* 453 So.2d 1081, 1083 (Ala.Crim.App.1984); *People v. Williams,* 63 A.D.2d 1035, 406 N.Y.S.2d 341, 343 (1978) (mem.).   In *Williams,* the defendant was challenging his conviction of first degree robbery for wrestling away a police officer's loaded service revolver during the course of a struggle then immediately fleeing the scene. *See* 406 N.Y.S.2d at 342.   The Appellate Division of the New York Supreme Court reversed, stating,

Under the peculiar circumstances of this case, we conclude that a robbery which consists of the taking of a weapon, and the immediate flight from the location with that weapon, *without more*, does not constitute robbery in the first degree within the meaning of [the relevant statute]. The fact that the stolen property is a deadly weapon does not *in and of itself* convert the robbery into a robbery in the first degree, i.e., robbery while armed with a deadly weapon.

*Id.* at 342–43 (citation omitted and emphasis added).

{11} Other cases discussing this issue hold that a conviction for aggravated robbery is proper when a weapon acquired during the commission of a robbery is used to aid the defendant's flight from the scene of the robbery. *See People v. Wallace*, 36 Cal.App.2d 1, 97 P.2d 256, 257–58 (1939) (holding concept of "perpetration" in relevant statute to encompass flight; thus, where acquired weapon aids flight, robbery is considered to have been perpetrated by one who was armed); *see also People v. Hood*, 160 Cal.App.2d 121, 324 P.2d 656, 657 (1958) (throwing whiskey bottles seized while fleeing scene of robbery created fact question as to whether the defendant was armed during perpetration of robbery). As the *Wallace* court said, "The escape of the robbers with their ill-gotten gains by means of arms is as important to the execution of the robbery as gaining possession of the property." *Id.*, 97 P.2d at 257.

■ {12} As the foregoing cases make clear, the determination of whether a defendant who seizes a weapon during the commission of a robbery is armed "while" committing the robbery is highly fact sensitive. When the defendant acquires the weapon and how he uses it after its acquisition are paramount. On those facts this case is distinguishable from the cases discussed above. In *Wallace*, the case that is perhaps most factually similar to this case, the evidence was that one of the defendants found and pointed a handgun at the victim at about the same time the other two defendants "were *through* looting the cash drawer and were on their way out of the [service] station." *Id.* (emphasis added). In contrast, the evidence

in this case is that after finding the handgun, Defendant threatened Means with it and continued looking for and ultimately found other valuables that he took from Means. As such, this case is consistent with cases which hold that when a defendant acquires a weapon during the commission of a robbery and then uses the weapon to harm or threaten his victim, or to acquire additional possessions from his victim, he is guilty of armed robbery. *See Bush v. State*, 580 So.2d 106, 108 (Ala.Crim.App.1991); *Commonwealth v. Boiselle*, 16 Mass.App.Ct. 393, 451 N.E.2d 1178, 1182–83 (1983). Thus, under the facts of this case, Defendant could properly be convicted of armed robbery.

{13} Defendant's reliance on *Lewis* is unavailing; the facts of that case are readily distinguishable from the facts here. In *Lewis*, we reversed the defendant's armed robbery conviction because the defendant neither used nor threatened force to obtain the victim's money. Instead, the defendant and his cohort took money from the victim's coat pocket while the victim was in another room. It was only after the victim discovered his money was missing that the defendant and his cohort pointed a gun at the victim. *See* 116 N.M. at 850, 867 P.2d at 1232. We concluded:

Under the facts of the present case, the victim's money was removed and separated from his person by stealth. [The d]efendant clearly had control over the victim's money once it had been taken from his clothing. [The d]efendant's use of a weapon only after the money was separated from the victim was merely an action to hold [the] victim at bay as he escaped from the motel.

*Id.* at 851, 867 P.2d at 1233. In contrast, there was nothing stealthy about the manner in which Defendant obtained Means's money in this case. We emphasize that in *Lewis*— as in *Wallace*, upon which we rely in part— the defendant used the weapon only in making his escape. Although Defendant here asserts that he likewise used the handgun he found only to aid his escape, the record indicates he used the handgun for far more than that. Indeed, he used the handgun not merely as a means for his escape, but also to

bolster his renewed demands—successfully, we add—for Means's money. This is sufficient to elevate his offense to armed robbery. *See Commonwealth v. Goldman*, 5 Mass.App. Ct. 635, 367 N.E.2d 1181, 1182 (1977) ("[P]ossession of a dangerous weapon, rather than its use, is the essential element of [armed robbery]."); *see also State v. Wingate*, 87 N.M. 397, 398, 534 P.2d 776, 777 (Ct.App. 1975) (quoting 2 Ronald A. Anderson, *Wharton's Criminal Law & Procedure* § 547, at 246–47 (1957), for the proposition that the "presence of violence, actual or constructive, is an essential ingredient of robbery").

*Admission of Evidence of Other Bad Acts*

{14}   Rule 11–404(B) provides:

Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.

"In order to admit evidence under Rule [11–404(B) ], the [trial] court must find that the evidence is relevant to a disputed issue other than the defendant's character, and it must determine that the prejudicial effect of the evidence does not outweigh its probative value, as set out by [Rule 11–403 NMRA 2000]." *State v. Beachum*, 96 N.M. 566, 567–68, 632 P.2d 1204, 1205–06 (Ct.App.1981). Rule 11–403 gives trial courts considerable though not unlimited discretion to admit or exclude evidence. We will only reverse a trial court's ruling concerning the admission of evidence if the court abused its discretion. *See State v. Aguayo*, 114 N.M. 124, 128, 835 P.2d 840, 844 (Ct.App.1992).

{15}   Defendant complains about the admission of testimony by three witnesses concerning suspicious or unlawful activity—specifically, break-ins—at two other homes in Roswell on the same day as the burglary of Shauna Means's home. The State wanted to introduce the testimony as evidence "of what ... Defendant was doing immediately before he went to [Means's home], because it [would] show[ ] his state of mind, his plan, motive and intent when he entered [Means's home]."

{16}   "The initial threshold for admissibility of prior uncharged conduct is whether it is probative on any essential element of the charged crime." *Aguayo*, 114 N.M. at 128, 835 P.2d at 844. Once a court determines that the proffered evidence is probative, it must weigh the probative value of the evidence against its prejudicial effect. *See id.* at 130, 835 P.2d at 846. As we have previously observed, "the probative value of such evidence is often not very great, [but] its prejudicial effect can be substantial." *Id.*

{17}   Viewing the contested evidence in this way, we conclude that the trial court abused its discretion by allowing the admission of the witnesses' testimony. None of the three witnesses, including the witness who reported seeing two people removing several items from one of the two homes, was able to identify Defendant as having been responsible for the intrusion at the home. The other two could testify only about damage to and the loss of property from their homes—the other two homes that were broken into on the same day as Means's.

{18}   The fact that the testimony was improperly admitted, however, does not necessarily require reversal. Carol Gahegan, who was with Defendant on the day of the break-ins, was given immunity to testify on behalf of the State about what she and Defendant did that day. Defendant did not object to the introduction of her testimony, either below or in this appeal. In fact, at a motion hearing before the second trial, in which the State sought permission to use Gahegan's taped testimony from the first trial because it had been unable to locate her for the second trial, Defendant asserted that he wanted Gahegan to testify at the second trial because she had provided favorable testimony at the first. The State was ultimately able to locate Gahegan before the second trial. She testified about Defendant being in Means's neighborhood at the time Means testified Defendant burglarized her home, but she also testified about Defendant breaking into the other two residences. Thus, the testimony of the other three witnesses was cumulative of Gahegan's testimony. We

therefore conclude that the admission of the testimony of the other three witnesses was harmless. *See State v. Woodward,* 121 N.M. 1, 10, 908 P.2d 231, 240 (1995) ("The erroneous admission of cumulative evidence is harmless error because it does not prejudice the defendant.").

*Sufficiency of the Evidence to Convict on the Other Charges*

 {19} Defendant also argues that there was insufficient evidence to convict him of aggravated burglary, *see* NMSA 1978, § 30–16–4(B) (1963); aggravated assault, *see* NMSA 1978, § 30–3–2(A) (1963); and felon in possession of a firearm, *see* NMSA 1978, § 30–7–16(A) (1987). Defendant bases his argument on the fact that Shauna Means's testimony was the only evidence upon which to convict him of these charges.

{20} In reviewing a case to determine whether there is sufficient evidence to support the verdict, we view the evidence in the light most favorable to the verdict, "resolving all conflicts and indulging all permissible inferences to uphold a verdict of conviction." *State v. Sanders,* 117 N.M. 452, 456, 872 P.2d 870, 874 (1994).

> We do not . . . substitute our judgment for that of the factfinder concerning the credibility of witnesses or the weight to be given their testimony. Testimony by a witness whom the factfinder has believed may be rejected by an appellate court only if there is a physical impossibility that the statements are true or the falsity of the

statement is apparent without resort to inferences or deductions.

*Id.* at 457, 872 P.2d at 875. Moreover, "[t]he testimony of a single witness may legally suffice as evidence to support a jury's verdict." *State v. Riley,* 82 N.M. 298, 299, 480 P.2d 693, 694 (Ct.App.1971). Applying this standard to Means's testimony, we conclude that substantial evidence supports Defendant's convictions.

*Cumulative Error*

{21} Finally, Defendant argues that cumulative error requires reversal. The cumulative error doctrine requires reversal when "the cumulative impact of errors is so prejudicial that it deprives a defendant of his fundamental right to a fair trial." *State v. Vallejos,* 1998–NMCA–151, ¶ 32, 126 N.M. 161, 967 P.2d 836. Because we have found no such prejudice, we find no cumulative error. *See id.*

**CONCLUSION**

{22} For the foregoing reasons, we affirm.

{23} **IT IS SO ORDERED.**

ALARID and ARMIJO, JJ., concur.