**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                                    **NO. 27,117**

**RAYMOND WHITING,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Neil C. Candelaria, District Judge**

Gary K. King, Attorney General
Ann M. Harvey, Assistant Attorney General
Santa Fe, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Eleanor Brogan, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**GARCIA, Judge.**

Defendant appeals his convictions for one count of aggravated battery by deadly weapon and great bodily harm and three counts of aggravated assault with a deadly weapon. Defendant raises several issues on appeal: (1) the district court erred in denying his two motions for a mistrial, (2) the district court erred in denying his motion for a new trial, and (3) there is insufficient evidence to support his convictions.

We affirm the district court on all issues.

**BACKGROUND**

On April 29, 2002, Ms. Rivera received a phone call from her friend, Celice Baca (Co-defendant), who was crying. Co-defendant asked Rivera to pick her up and drive to Co-defendant's sister's house to collect her things because her sister was throwing Co-defendant out on the street. After going to Co-defendant's sister's house, Co-defendant next asked Rivera to drive to Co-defendant's father's house. Upon arriving at the father's home, Co-defendant's boyfriend, Raymond Whiting (Defendant), got into the back seat of Rivera's car. Rivera became nervous and scared. She did not want Defendant in her car. Defendant and Co-defendant told Rivera to drive to the west side of Albuquerque. After exiting the freeway and approaching a truck stop, Rivera stopped her car and refused to drive any further. Defendant pulled out a knife, moved it towards Rivera's throat, and threatened to kill her. A struggle ensued as Rivera tried to fight off Defendant. Co-defendant was also punching Rivera from the passenger seat. Rivera temporarily passed out. Defendant and Co-defendant threw Rivera out of the car. Rivera suffered lacerations on her forearm and shoulder, as well as knife cuts on her hand.

Two men, Mr. Herrera, a security guard, and Mr. Hicks, a truck driver, were talking outside the truck stop when they heard Rivera begin to yell for help. They ran

over to Rivera and tried to help her off the ground. Contemporaneously, Defendant began driving Rivera's car. Defendant made three separate passes at Rivera, Herrera, and Hicks, who all moved out of the way during each pass to avoid being hit by the car. Defendant then left the truck stop and drove away.

At the start of the trial, Defendant and Co-defendant were being tried together as joined parties and presented the case in that manner during the voir dire to select a jury. During a break in voir dire, the district court learned that Co-defendant desired to accept a plea agreement. After voir dire was completed and outside the presence of the jury, the district court heard and accepted Co-defendant's plea agreement. Immediately thereafter, also outside the presence of the jury, Defendant moved to impanel a new jury and moved for a mistrial. Defendant argued that the jury would be tainted by Co-defendant's sudden absence. The district court denied the motion and later instructed the jury, "Ms. Baca is no longer involved in this case. You are not to speculate nor discuss the reasons why." The jury found Defendant guilty of one count of aggravated battery by deadly weapon and great bodily harm and three counts of aggravated assault with a deadly weapon. After the trial was complete, Defendant renewed his motion for a mistrial, and the district court denied Defendant's motion for the second time.

After the trial ended, defense counsel interviewed members of the jury and

questioned them regarding the case. Defense counsel inquired whether the State had proven that Defendant was present during the incident. These discussions occurred in the presence of the district court and the district attorney. The conversations were not on the record, and the parties disagree about what transpired during these conversations with jurors. According to Defendant, "the jurors indicated that they considered the fact that the Defendant did not take the stand," and one of the jurors stated something to the effect that "it was really close, but we figured that since [Defendant] didn't testify, or put on an alibi witness, that [Defendant] was there." According to the State, "[One] of the jurors indicated it was a close decision and commented that [the] defense did not put on evidence to support their theory." Following these discussions, Defendant filed a motion for a new trial. No affidavit or other form of verified statement was attached to Defendant's motion. A hearing on the motion was held, and the district court denied Defendant's motion. No record of this hearing on Defendant's motion for a new trial has been provided for appellate review.

**DISCUSSION**

**Absence of Co-Defendant**

Defendant argues the district court erred by denying his motions for a mistrial. Defendant asserts that the jury panel was tainted when it heard the instruction that Co-

4

defendant was no longer involved in the case. We must decide whether the district court abused its discretion in denying Defendant's motions. *State v. Gonzales*, 2000-NMSC-028, ¶ 35, 129 N.M. 556, 11 P.3d 131 ("We review a [district] court's denial of a motion for mistrial under an abuse of discretion standard.").

Defendant has asserted and therefore has the burden to show that the extraneous information actually reached the jury. "This burden is not discharged merely by allegation; rather, [the d]efendant must make an affirmative showing that some extraneous influence came to bear on the jury's deliberations." *State v. Mann*, 2002-NMSC-001, ¶ 19, 131 N.M. 459, 39 P.3d 124 (internal quotation marks and citation omitted). It is not clear that Co-defendant's absence after jury selection constitutes extraneous information pursuant to the authorities cited to the Court by Defendant. Even if Co-defendant's participation in voir dire was considered extraneous, the district court could find that this information did not prejudice Defendant or result in an unfair trial. *Id.* ¶ 20.

Co-defendant's participation in this incident remained part of the evidence presented throughout the trial. Defendant has failed to identify any material change in the evidence presented that might have resulted from Co-defendant's absence after jury selection. Defendant also failed to identify any specific matter raised in jury selection to show that the jury was tainted by information about Co-defendant.

5

Instead, Defendant asks this Court to speculate that there was a reasonable possibility that the information prejudiced him. Defendant asserts that the jury could speculate that the reason Co-defendant was no longer involved in the trial was due to her plea of guilty taken outside their presence. Defendant then argues that the jury would construe any guilt by Co-defendant into a belief that Defendant must also be guilty. There are no facts in the record to support Defendant's assertions. Speculation is not enough to prove actual prejudice. *State v. Gardner*, 2003-NMCA-107, ¶¶ 9-10, 134 N.M. 294, 76 P.3d 47 (rejecting the defendant's "speculative argument" to prove prejudice to jurors); *In re Ernesto M., Jr.*, 1996-NMCA-039, ¶ 10, 121 N.M. 562, 915 P.2d 318 ("An assertion of prejudice is not a showing of prejudice.").

As a curative measure, the district court instructed the jury not to concern itself with the reasons why Co-defendant was no longer involved in the case. The court's instruction was given to eliminate any potential prejudice arising from Co-defendant's absence after jury selection. We presume that jurors follow the instructions of the district court. *State v. Gonzales*, 113 N.M. 221, 230, 824 P.2d 1023, 1032 (1992) ("The jury is presumed to follow the court's instructions."); *see Gardner*, 2003-NMCA-107, ¶ 12 (recognizing the speculative nature of alleged bias during voir dire). Defendant failed to prove that he was harmed by information regarding Co-defendant during jury selection. Given the speculative nature of Defendant's allegation of bias

or prejudice, the district court's rulings were not "against the logic and effect of the facts and circumstances before the court, and the trial court did not abuse its discretion." *Gardner*, 2003-NMCA-107, ¶ 12 (internal quotation marks and citation omitted). Co-defendant's absence from trial after jury selection, without more, does not constitute the type of information sufficient to prejudice Defendant or cause an unfair trial. The district court did not abuse its discretion when it found that this information did not prejudice Defendant and denied his motions for a mistrial.

**The Juror Statements After Trial**

Defendant argues on appeal that the district court abused its discretion in denying his motion for a new trial. Defendant asserts that the jury ignored the court's instructions and impermissibly used Defendant's decision not to testify as evidence of his guilt. After reviewing the district court's decision for an abuse of discretion, we affirm the district court's denial of Defendant's motion for a new trial. *See State v. Moreland*, 2008-NMSC-031, ¶ 9, 144 N.M. 192, 185 P.3d 363.

Defendant asks this Court to impeach the jury's verdict based on the jurors' comments after trial. Rule 11-606(B) NMRA and New Mexico case law do not permit impeaching jury verdicts based on juror statements after trial except under limited circumstances. Rule 11-606(B) states:

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of

7

> the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith.

Rule 11-606(B) then lists three exceptions describing when a juror may testify. A juror may testify about extraneous information reaching the jury, outside influence on the jury, and any mistake the jurors made in entering a verdict on the verdict form. Rule 11-606(B). Defendant makes no argument that the jurors' statements following trial fit within one of these three exceptions.

Defendant argues that we should review the jurors' statements to determine whether there was juror misconduct in not following the district court's instructions. We do not interpret Rule 11-606(B) to allow a juror to testify about mental processes during deliberations. *Mann*, 2002-NMSC-001, ¶ 27 ("Although some forms of misconduct, such as a juror making an unauthorized visit to the scene of a crime, may infringe on a defendant's right to a fair jury, we are cautious and reluctant to apply this reasoning to actions approaching juror deliberations."); *State v. Sena*, 105 N.M. 686, 687-88, 736 P.2d 491, 492-93 (1987) (affirming the district court's refusal to hear post-trial evidence of jury misconduct based on juror's statement that he knew the defendant was guilty but could not base the conviction on evidence from trial); *Duran v. Lovato*, 99 N.M. 242, 248, 656 P.2d 905, 911(Ct. App. 1982) (concluding that verdict impeachment under Rule 11-606(B) is not aimed at jury deliberations but

at jury misconduct such as conducting independent speed tests prior to deliberations).

Defendant relies primarily on *DeGraff* for his argument. *State v. DeGraff*, 2006-NMSC-011, 139 N.M. 211, 131 P.3d 61. In the portions of *DeGraff* cited by Defendant, the Supreme Court analyzed whether prosecutorial comments regarding the defendant's silence during the trial amounted to fundamental error. *Id.* ¶¶ 21-23. *DeGraff* does not address juror misconduct or any resulting abuse of discretion by the district court involving post-trial statements made by a juror. *See id.*

Defendant's evidentiary argument is based solely upon counsel's memory and recollection of juror comments during the interviews taken after the trial ended and the jury was dismissed. Defense counsel's recollection of the juror comments are contested by the State and the district court rejected Defendant's argument. Defendant does not provide this Court with any affidavits or other evidence of misconduct. In addition, Defendant failed to present for our review the district court record of the hearing on this post-trial motion. Without any record to support Defendant's arguments, we will not review his claims. *State v. Jim*, 107 N.M. 779, 780, 765 P.2d 195, 196 (Ct. App. 1988) ("It is defendant's burden to bring up a record sufficient for review of the issues he raises on appeal"). The district court did not abuse its discretion when it denied Defendant's post-trial motion for a new trial.

**Sufficiency of the Evidence**

Defendant argues that there was insufficient evidence to support his convictions. Specifically, Defendant's theory is that the State did not prove beyond a reasonable doubt that Defendant committed the crimes because: (1) Hicks did not testify, and (2) Herrera could not positively identify Defendant as the person who was driving the car at the time of the incident.

We review the evidence to determine whether there was substantial evidence to support the convictions. "[A s]ubstantial evidence review requires analysis of whether direct or circumstantial substantial evidence exists and supports a verdict of guilt beyond a reasonable doubt with respect to every element essential for conviction. We determine whether a rational factfinder could have found that each element of the crime was established beyond a reasonable doubt." *State v. Kent*, 2006-NMCA-134, ¶ 10, 140 N.M. 606, 145 P.3d 86 (citations omitted). "The reviewing court does not weigh the evidence or substitute its judgment for that of the [factfinder] as long as there is sufficient evidence to support the verdict." *State v. Mora*, 1997-NMSC-060, ¶ 27, 124 N.M. 346, 950 P.2d 789.

In order to convict Defendant of aggravated assault with a deadly weapon, the State needed to establish beyond a reasonable doubt the following elements of the crime:

> 1. The [D]efendant touched or applied force by trying to run over or strike [the victim] with a motor vehicle;

10

2. The [D]efendant acted in a rude, insolent or angry manner;

3. The [D]efendant intended to touch or apply force to [the victim] by running over or striking [the victim] with a motor vehicle;

OR

1. The [D]efendant drove a motor vehicle at or towards [the victim];

2. The [D]efendant's conduct caused [the victim] to believe that the defendant was about to intrude on [the victim's] bodily integrity or personal safety by touching or applying force to [the victim] in a rude, insolent, or angry manner;

3. A reasonable person in the same circumstances as [the victim] would have had the same belief;

AND

4. The [D]efendant used a motor vehicle. A motor vehicle is a deadly weapon only if you find that a motor vehicle, when used as a weapon, could cause death or great bodily harm;

AND

5. This happened in New Mexico on or about the 29th day of April, 2002.

The State charged Defendant with three counts of aggravated assault, one for each victim: Rivera, Herrera, and Hicks.

Defendant claims there was insufficient evidence for a conviction for aggravated assault against Hicks because Hicks did not testify and because the State

11

failed to present any evidence regarding Hicks' belief about Defendant's conduct. Defendant's first argument fails because Hicks does not have to testify in order for the State to prove its case under the first of the two available options. Rivera and Herrera provided sufficient detailed testimony regarding Defendant's actions on April 29, 2002. Rivera testified that Defendant made several passes in an attempt to run her over and to run over the two men helping her. Herrera testified that "the guy who was driving" drove toward him, "the woman," and "the truck driver" and that they all had to move "so he wouldn't get us." Rivera and Herrera's testimony is sufficient to establish the elements of the aggravated assault by Defendant against Hicks. *State v. Hamilton*, 2000-NMCA-063, ¶ 20, 129 N.M. 321, 6 P.3d 1043 (stating that a single witness' testimony can be sufficient to support a jury's verdict) (citation omitted). Once the State proved its first theory utilizing Rivera's and Herrera's testimony, it was not required to establish a second theory that relied upon the victim's beliefs. *See* UJI 14-306 NMRA. Rivera and Herrera provided sufficient evidence to prove the elements of aggravated assault. Hicks was not required to testify about his beliefs because they were unnecessary.

Defendant next argues that because Herrera could not positively identify Defendant as the person driving the vehicle on the night in question, there was insufficient evidence for a conviction for aggravated assault against Herrera and

Rivera and for aggravated battery with a deadly weapon against Rivera. Defendant fails to present any authority that every witness must positively identify a defendant in order for the state to demonstrate beyond a reasonable doubt that a defendant committed the crime. Rivera positively identified Defendant as her assailant and as the driver. As a result of Rivera's testimony, the jury had evidence that could positively identify Defendant as the driver. The inconclusive testimony from Herrera about whether Defendant was the driver went to the weight of the evidence that the jury was required to consider. *State v. Vigil*, 87 N.M. 345, 350, 533 P.2d 578, 583 (1975) ("The determination of the weight and effect of the evidence, as well as inferences to be drawn from both direct and circumstantial evidence, are matters reserved for the determination of . . . the trial jury."). It is the job of the jury, not the appellate court, to hear the evidence presented at trial, weigh the evidence, and decide a defendant's guilt. UJI 14-5020 NMRA ("You alone are the judges of the credibility of the witnesses and the weight to be given to the testimony of each of them."). A reasonable factfinder could have relied on Rivera's testimony to determine that Defendant was the driver. *State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829 ("Contrary evidence supporting acquittal does not provide a basis for reversal because the jury is free to reject [the D]efendant's version of the facts."). Sufficient evidence exists to affirm the Defendant's convictions on all of the

aggravated assault charges and the aggravated battery charge.

**CONCLUSION**

For the foregoing reasons, we affirm the district court.

**IT IS SO ORDERED**

_____
**TIMOTHY L. GARCIA, Judge**

**WE CONCUR:**

_____
**JAMES J. WECHSLER, Judge**

_____
**MICHAEL D. BUSTAMANTE, Judge**