No. 30,479.

Rose Haffey et al., *Appellees,* v. The City of Kansas City et al., *Appellants.*

(14 P. 2d 729.)

Opinion filed October 8, 1932.

*A. H. Skinner, George H. West, John C. O'Brien, William Drennan, Joseph A. Lynch, E. S. McAnany, M. L. Alden, T. M. Van Cleave* and *C. W. Trickett,* all of Kansas City, for the appellants.

*Thomas A. Pollock* and *J. E. Schroeder,* both of Kansas City, for the appellees.

The opinion of the court was delivered by

Smith, J.: In this action taxpayers in Kansas City, Kan., have brought suit against the city and its officers to enjoin the issuance of tax bills against their property to pay for the cost of repaving certain blocks of Osage avenue. Judgment was for certain of the plaintiffs. Defendants appeal.

For the purpose of consideration in this opinion the plaintiffs may be divided into two classes: Those who signed the petition whereby the governing body of the city was to do the paving and those who did not.

The work in question was done under the provisions of R. S. 1930 Supp. 13-1078 to 13-1089, commonly known as the "tax bill" act. The petition of appellees alleged many defects in the proceedings under which the work was done. The answer of the appellants was a general denial, and a claim of estoppel and the bar of the thirty-day statute of limitations.

Trial was by the court. Findings of fact and conclusions of law were made. They were, in effect, that the petition provided for in R. S. 1930 Supp. 13-1078 had not been signed by the resident owners of a majority of the real estate fronting on the street to be

paved; that certain of the plaintiffs had signed the petition and certain ones had not; that there was no evidence that any of the plaintiffs had any knowledge of the alleged defects in the petition or irregularity in the proceedings until after the work was finished and tax bills prepared; that the petition was signed by resident owners of more than one-half of the front feet owned by residents liable for the improvement; nonresident-owned property was not taken into account in determining the sufficiency of the petition; that the plaintiff, Rose Haffey, did not sign the petition, and that there was no evidence that she had any actual knowledge or notice of said improvement until after it was completed; that plaintiffs' respective properties have been benefited by the improvement to an extent greater than the cost assessed against each. There were further findings of fact, but they are not deemed essential to the decision here. It should be noted here that all of the plaintiffs who were present and testified stated that they saw the work being done, made no protest to anyone, either to the contractor or any city official, and knew that their property was to be assessed for the payment of the improvement. It was agreed between the parties that all of the absent plaintiffs, if present and called on to testify, would testify to practically the same as those who were called to the witness stand.

On these findings of fact and admissions the court gave judgment against those plaintiffs who had signed the petition for the work and in favor of the plaintiffs who had not signed the petition. From that judgment this appeal is taken. The plaintiffs to whom relief was denied filed a cross-appeal, but that was dismissed, leaving for consideration only the appeal of the defendants. The basis for the judgment of the court was that the petition for the work was not signed by resident owners of a majority of the real estate fronting on the street to be paved, and hence was a void petition and conferred no authority on the governing body of the city. It was held that those plaintiffs who had signed the petition were estopped from questioning its sufficiency.

Appellants urge the petition did not need to be signed by resident owners of a majority of the property fronting on the street to be paved, but only by a majority of the resident owners of property fronting on the street to be paved, and that since this petition had that many signers it was a valid petition; that even though section 1 of chapter 128 of the Laws of 1929 be construed as requiring a

clear majority of all the front footage to be improved, whether owned by residents or nonresidents, nevertheless the said petition, being apparently sufficient upon its face and being certified to by the city engineer and city attorney as to its sufficiency, gave jurisdiction to the governing body of the city to make the improvement; that all of the plaintiffs, having stood by during the progress of the work, and having full knowledge that their property was being enhanced in value by reason of said improvement, and having failed to make any objections or file any suit until after the work was completed and accepted by the city and until a large number of property owners had paid their assessments in cash, are now estopped from questioning the validity of the petition or any other irregularity in the proceeding; that the property owners' petition, even though actually deficient in signers under the trial court's interpretation of the law, nevertheless gave the governing body jurisdiction to make the improvement; that the four plaintiffs who were made parties subsequent to the thirty-day period are barred by the statute. We have concluded that the case may be disposed of on the ground of estoppel.

This question is dealt with by this court in *Meistrell v. Ellis County*, 76 Kan. 319, 91 Pac. 65. (See, also, *Doran v. Barnes*, 54 Kan. 238, 38 Pac. 300.) In that case a number of citizens brought a suit to enjoin the county commissioners of Ellis county from carrying out a contract for the building of a bridge. The suit was not brought until the construction of the bridge was well advanced.

This court said:

"The plaintiffs came into a court of equity asking a permanent injunction against the payment of the contractor for work which had been in progress for months, upon which a large amount of money had been expended, and when the contractor was not even a party to the action. Assuming that originally they had a right to interpose and enjoin, it has been forfeited by their silence and delay. The contract was let and the work was in progress for about six months before they made any complaint or took any steps to assert their rights. With a knowledge that the contract had been made, and that the bridge was being built, they stood silently by and suffered the contractor to make a special bridge to fit that crossing and to incur expenses and liabilities of a burdensome character. To allow them to enjoin a public improvement which would so seriously affect others after such inaction and delay would be grossly inequitable. As was said in *Commissioners of Morris Co. v. Hinchman*, 31 Kan. 729, 3 Pac. 509, 'It is a well-established rule in equity that if a party is guilty of laches or unreasonable delay in the enforcement of his rights he thereby forfeits his claim to equitable relief.' (p. 736.)

"The case of *Brown v. Merrick County,* 18 Neb. 355, 25 N. W. 356, is a case where certain taxpayers sought to enjoin the county commissioners from paying for the construction of a public bridge. It was contended that the board had failed to comply with the law in several particulars, but there was no charge of bad faith against the board or of fraud in contracting for the building of the bridge, and it was said that so long as the board acted within its authority no injunction would lie to restrain it; that 'a taxpayer who seeks to enjoin the payment of money for the erection of a public bridge which he claims is being constructed in violation of law, must act with reasonable promptness. If he is guilty of gross laches, and knowingly permits the contractor to incur liabilities in good faith in the construction of the greater portion of the work an injunction will be denied.'" (*Meistrell v. Ellis County,* 76 Kan. 319, 323, 91 Pac. 65.)

It has been seen that in the case under consideration appellees waited till they were traveling over the pavement before beginning their suit. In *Kirsch v. City of Abilene,* 120 Kan. 749, 244 Pac. 1054, a number of taxpayers asked that the city of Abilene and its officers be enjoined from the erection of a city hall and auditorium on a block of ground which had been used as a city park. They stood by and permitted the governing body not only to submit the proposition to the citizens to vote bonds for the payment of the cost of said structure, but to sell the same and let a contract for the building of the same before commencing their action. The court held, regardless of the fact as to whether or not the city had any power to build a city hall in a public park, that plaintiffs were estopped, by reason of their laches, from obtaining equitable relief in the premises. The court in considering this question said, referring to the plaintiffs:

"They are invoking the jurisdiction of equity, and under the maxim that 'he who seeks equity must do equity,' they are only entitled to such relief as is equitable and just under the circumstances. A court will grant such relief where conscience, good faith and reasonable diligence exist and has been exercised, but where these are lacking the relief will be denied. (10 R. C. L. 395.) If a party sleeps on his rights or unnecessarily delays action until the rights of others have intervened, or conditions have been changed so that it would be inequitable to enforce the right asserted, relief will be denied on the ground of laches. If the plaintiff stands by and remains passive while the adverse party incurs risks, enters into obligations and makes large expenditures, so that by reason of the changed conditions disadvantage and great loss will result to the adverse party which might have been avoided if the plaintiff had asserted his claim with reasonable promptitude, these are grounds for declining to grant the relief. (21 C. J. 231.)" (p. 751.)

In *Doran v. Barnes,* 54 Kan. 238, 38 Pac. 300, a case brought to enjoin the collection of a paving tax, turned upon the thirty-day

statute of limitations, but the following language helpful to us appears in the opinion in speaking of the case of *City of Topeka v. Gage,* 44 Kan. 87:

"In that case the fraud which rendered the proceedings null and void was unknown to the lot owner at the time the assessment was ascertained, and it was urged, on account of the concealment of the fraud, that the thirty days' statute of limitations did not apply. This court held that position not tenable. In this case the lot owner had the opportunity, at the time the petition was presented to the mayor and council for consideration, to examine and ascertain whether the parties signing the same acted with authority. He also had ample opportunity, prior to the time that the amount of the assessment was ascertained, to have called the attention of the mayor and city council to any insufficient signing. He did not do this, but waited more than thirty days after the assessment was ascertained before attacking the petition or any of the proceedings. (*Wahlgren v. Kansas City,* 42 Kan. 243; *Hammerslough v. Kansas City,* 46 id. 37, 41; *Lynch v. Kansas City,* 44 id. 453; *Marshall v. City of Leavenworth,* 44 id. 459.)" (p. 241.)

In *Farr v. City of Detroit,* 136 Mich. 200, the court, in dealing with a similar question, said:

"Complainant, whose property was benefited by street paving to the extent of the assessment, being charged with knowledge that, under the charter, the only method of compensating for the improvement was by an assessment on the property, having had such knowledge of the work as a person living on the street would naturally have, and having made no objection until after the completion of the work, was not entitled to the remedy in equity to arrest the proceedings of the public authorities and set aside the assessment, though the petition for the improvement was not signed by a majority of the frontage, giving the city council jurisdiction to proceed, and though complainant did not acquire the property until the work had been partly done."

See, also, *Collins v. Ellensburg,* 68 Wash. 212, where it was said:

"The petition is not a jurisdictional prerequisite, to proceed without petition was not to proceed without power. It was at most the exercise, in an irregular manner, of a power amply conferred. The legislature might have conferred the power without requiring any petition. There is no constitutional inhibition against such a course. The lack of a petition was therefore a mere irregularity; and the right to object on that account was waived by the failure of the property owners to protest against the improvement on that ground, in response to the notice given by the declaratory ordinance as published, and within the time fixed in that notice." (p. 219.)

This case is one for the application of the above principles. Here all the plaintiffs but one had actual knowledge that the street in front of their residences was being paved. They had actual knowledge that the work was being done under the "tax bill" act. They all had notice under the act of the time fixed to hear ob-

jections of lot owners as to the value of any lot as fixed by the appraisers. During all this time appellees stood by and watched the work being done, saw the contractor incur expense and their property improved to a greater extent than the cost of the assessments. It was the duty of these appellees to bring an action to stop the work from being done before so much expense had been incurred by the contractor and before the position of the parties had so changed due to the failure of appellees to act on their rights that it would be inequitable and unjust to give them the relief sought. As to the appellee who did not appear at the trial, it appears from the record that she had constructive notice of what was going on, and under the rule announced in *Doran v. Barnes*, supra, she is bound.

Appellees argue vigorously that the petition was jurisdictional, and that since the petition in this case was not sufficient to confer jurisdiction on the governing body of the city that estoppel does not arise from the failure of appellees to act till after the work under the void petition was completed.

The cases cited do not sustain this proposition. They are all cases where there was no authority at all in the governing body to contract for the improvement in question. We have already seen that this is not a case where the governing body acted without authority. It merely acted in an irregular manner. Appellees urge many reasons why the judgment should be affirmed other than those noticed here, but they are legal questions which are decided by the trial court against the claims of appellees, and since no cross-appeal was filed they will not be examined in this court.

Appellees filed a motion to dismiss this appeal. It sets out twelve grounds. None of them is good.

The judgment of the district court is reversed with directions to enter judgment for defendants.