This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                    **NO. 29,109**

**MANUEL HECTOR CHACON-LOZANO,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF RIO ARRIBA COUNTY**
**Timothy L. Garcia, District Judge**

Gary K. King, Attorney General
Margaret McLean, Assistant Attorney General
Santa Fe, NM

for Appellee

Jacqueline L. Cooper, Chief Public Defender
Will O'Connell, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**WECHSLER, Judge.**

Defendant Manuel Hector Chacon-Lozano appeals his convictions after a jury

trial for two counts of kidnapping, three counts of criminal sexual contact of a minor (CSCM), two counts of intimidation of a witness, and one count of enticement of a child. We hold that (1) Defendant did not receive ineffective assistance of counsel when trial counsel (a) did not move to exclude statements made by the victim to a sexual assault nurse examiner (SANE nurse) on Confrontation Clause or hearsay grounds, and (b) did not proffer a lesser-included-offense instruction for false imprisonment for the two counts of kidnapping; (2) the district court did not abuse its discretion by admitting (a) hearsay testimony regarding statements the victim's father made to the SANE nurse who examined the victim, and (b) testimony regarding a prior statement made by Defendant during a plea allocution in a related case; (3) prosecutorial misconduct did not deprive Defendant of a fair trial; and (4) cumulative error did not deprive Defendant of a fair trial. Accordingly, we affirm Defendant's convictions.

**BACKGROUND**

Defendant appeals his convictions for two counts of kidnapping, three counts of CSCM, two counts of intimidation of a witness, and one count of enticement of a child. The jury returned not guilty verdicts on criminal sexual penetration of a minor (CSPM) and attempt to commit CSPM. The convictions arose out of several incidents in which Defendant molested the minor daughter of his girlfriend (J.G.) while his

2

girlfriend was briefly imprisoned.

J.G. testified as a witness for the State. During her testimony, J.G. testified regarding three incidents in which Defendant touched her. First, she testified that Defendant tried to kiss her in the living room of her mother's home but that she said "no." Defendant then grabbed J.G. by the arm and took her into J.G.'s mother's room. While in J.G.'s mother's bedroom, Defendant touched J.G. with his hands, over J.G.'s clothes, on her "privates." Second, J.G. testified that a second incident took place in one of the back bedrooms of her mother's home. J.G. testified that, during this incident, Defendant again touched her in the same area, with his hands, over her clothes. Third, J.G. testified that a third incident took place in which Defendant tied J.G. to a chair using an orange cord and put tape over her mouth. Defendant then took off J.G.'s clothes and touched her private areas. After Defendant finished touching J.G., Defendant told J.G. that he would hit her if she told her mother about the incident.

On appeal, Defendant argues that (1) he received ineffective assistance of counsel, (2) the district court erred in admitting J.G.'s father's hearsay statement made to a SANE nurse, (3) the district court improperly admitted a prior statement that it previously ruled inadmissible, (4) prosecutorial misconduct deprived Defendant of a fair trial, and (5) cumulative error deprived Defendant of a fair trial. We address each

3

of Defendant's arguments in turn.

**INEFFECTIVE ASSISTANCE OF COUNSEL**

Defendant argues that he received ineffective assistance of counsel because his trial counsel failed to move to exclude statements made by J.G. to a SANE nurse on the grounds that the statements violated Defendant's right to confront witnesses and because the statements were inadmissible hearsay. Additionally, Defendant argues that he received ineffective assistance of counsel because his trial counsel failed to proffer a lesser-included-offense instruction for false imprisonment as a lesser-included offense of the kidnapping charges.

In order to establish a prima facie case of ineffective assistance of counsel, a defendant has the burden of showing that (1) "counsel's performance fell below that of a reasonably competent attorney," and (2) "that the deficient performance prejudiced the defense." *State v. Hester*, 1999-NMSC-020, ¶ 9, 127 N.M. 218, 979 P.2d 729 (internal quotation marks and citation omitted). This standard requires the defendant to demonstrate that the errors of counsel "were so serious as to deprive the defendant of a fair trial" such that the results of the trial are not reliable. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). We review counsel's performance in a "highly deferential" manner; "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional

4

judgment." *Id.* at 689-90. An appellate court "will not second guess the trial strategy and tactics of the defense counsel." *State v. Gonzales*, 113 N.M. 221, 230, 824 P.2d 1023, 1032 (1992). In order to find prejudice, a court "must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors." *Strickland*, 466 U.S. at 696.

**Statements Made to SANE Nurse**

We first address Defendant's arguments that he received ineffective assistance of counsel because his trial counsel did not move to exclude statements J.G. made to the SANE nurse prior to J.G.'s examination. We begin by summarizing the testimony at issue.

Dr. Jamie Gagan, the medical director of the SANE program in Santa Fe, testified on behalf of the State. She testified that Mindy Tucker was the nurse examiner who examined J.G., but that Tucker left the SANE program for personal reasons. Dr. Gagan testified that, before the examination, J.G. provided Tucker with a statement, commonly referred to as a "history." During the history, J.G. told Tucker about three specific incidents in which Defendant touched J.G.'s private areas, including one in which Defendant asked her to orally copulate Defendant's penis and several instances in which Defendant stuck his fingers in J.G.'s anus. Based on the history, Tucker ordered laboratory tests for sexually transmitted diseases. J.G. tested

positive for chlamydia, which Dr. Gagan testified is conclusive of sexual contact.

Detective Lawrence Murray, who was the investigating officer assigned to this case, also testified regarding the interview with the SANE nurse. He personally observed the interview from another location via video monitor. Although he did not provide details of the interview, Detective Murray testified that J.G. gave good disclosure, revealed three instances of sexual contact with Defendant, and revealed that there was some type of penetration during the instances. Detective Murray also testified that he later learned from Tucker that J.G. tested positive for chlamydia and that J.G. did not allege that anyone other than Defendant touched her inappropriately. Specifically, because of hearsay concerns, Detective Murray did not reveal details about specific statements made by J.G. during the interview.

**Confrontation Clause**

Defendant first contends that J.G.'s statements to the SANE nurse were testimonial and that their introduction at trial violated Defendant's right to confront his accuser. Because defense counsel failed to object to the admission of these statements, Defendant argues that he received ineffective assistance of counsel. Generally, "[o]ut-of-court testimonial statements are barred under the Confrontation Clause, unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness[.]" *State v. Zamarripa*, 2009-NMSC-001, ¶ 23, 145 N.M.

6

402, 199 P.3d 846

Defendant argues that J.G.'s statements to the SANE nurse were testimonial under this Court's opinion in *State v. Romero*, 2006-NMCA-045, 139 N.M. 386, 133 P.3d 842, *aff'd by* 2007-NMSC-013, 141 N.M. 403, 156 P.3d 694. In *Romero*, this Court held that "the victim's statement to the SANE practitioner is testimonial because it falls into the third category of evidence labeled testimonial . . ., statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." 2006-NMCA-045, ¶ 54 (internal quotation marks and citation omitted). Therefore, in *Romero*, because the victim was not available to testify, this Court held that the district court should have excluded the victim's statements to the SANE nurse. *Id.* ¶¶ 47, 61.

While *Romero* indicates that J.G.'s statements to Tucker were testimonial, Defendant's confrontation rights were not violated by Dr. Gagan's and Detective Murray's testimony regarding the statements. J.G. testified, and defense counsel was able to cross-examine her regarding her version of the events leading to Defendant's convictions. The Confrontation Clause only applies when the declarant of the testimonial statements is unavailable to testify. *See id.* ¶ 46 ("[T]he Confrontation Clause is always implicated when 'testimonial' statements of an *absent* witness are

7

admitted" (emphasis added)). Under these circumstances, Defendant did not receive ineffective assistance of counsel by trial counsel not moving to exclude J.G.'s statements made to Tucker on Confrontation Clause grounds.

**Hearsay**

Defendant alternatively contends that his trial counsel was ineffective for failing to move to exclude J.G.'s statements made to Tucker during the SANE interview as hearsay under Rule 11-802 NMRA. Defendant argues that the medical diagnosis and treatment exception to the hearsay rule contained in Rule 11-803(4) NMRA does not apply to a victim's statements made to a SANE nurse.

Defendant relies on *State v. Mendez*, 2009-NMCA-060, 146 N.M. 409, 211 P.3d 206, *rev'd by* 2010-NMSC-044, 148 N.M. 761, 242 P.3d 328, and *State v. Ortega*, 2008-NMCA-001, 143 N.M. 261, 175 P.3d 929, *overruled by Mendez*, 2010-NMSC-044, for the proposition that "a child's statement describing sexual abuse to a SANE nurse was not admissible under the medical diagnosis and treatment exception to hearsay." Indeed, in *Mendez*, this Court held that "the fact that a SANE examination has medical aspects does [not] change the fact that . . . its purpose was to investigate and gather evidence of a crime." 2009-NMCA-060, ¶ 34. Therefore this Court, in *Mendez*, held that a victim's "out-of-court narrative during the SANE examination does not fall within the medical diagnosis or treatment exception"

8

because "statements made to a SANE nurse are not predominately for diagnosis and treatment[.]" 2009-NMCA-060, ¶¶ 40-41. This Court's conclusion in *Mendez* echoed its decision in *Ortega*, 2008-NMCA-001, ¶¶ 16-27, which held that a victim's statements to a SANE nurse were not admissible because the "examination was not conducted for the purpose of medical diagnosis or treatment" and, instead, the examination's primary purpose was "gathering evidence." *Id.* ¶ 26.

However, since Defendant filed his brief in chief, our Supreme Court has clarified the law regarding whether SANE nurse testimony regarding statements of an alleged sexual abuse victim is admissible under Rule 11-803(4). *See Mendez*, 2010-NMSC-044. In *Mendez*, our Supreme Court held that statements made to a SANE nurse need not be excluded due to "the overall forensic aspect of the SANE examination." *Id.* ¶ 24. Instead, a district court must "sift[] through statements, piece-by-piece, making individual decisions on each one . . . to evaluate the trustworthiness of each . . . statement[], taking into consideration [the victim's] help-seeking motivation and the pertinence of such statements to medical diagnosis or treatment." *Id.* ¶ 46. Our Supreme Court stated that *Ortega's* focus on the primary purpose of the examination was inconsistent with Rule 11-803(4)'s dual rationales, which are (1) the inherent reliability of statements by a declarant seeking medical treatment based on a declarant's self-interest in obtaining proper medical attention and (2) the inherent

reliability of statements reasonably relied upon and therefore pertinent to a medical diagnosis and treatment. *Mendez*, 2010-NMSC-044, ¶¶ 20-21, 39.

Under this new framework, we cannot say that the statements J.G. made to Tucker would have been inadmissible. Indeed, even without objection from counsel, Dr. Gagan and Detective Murray testified briefly regarding the medical purposes of the SANE examination and the oral history preceding the examination. The record before us therefore does not establish a prima facie case of ineffective assistance of counsel due to the uncertainty regarding the admissibility of the statements.

Additionally, even if counsel's failure to object to the testimony regarding J.G.'s statements during the SANE interview fell below the standards of a reasonably competent attorney, Defendant was not prejudiced to the extent that the results of his trial are unreliable. *See Strickland*, 466 U.S. at 687. As we discussed, J.G. directly testified about the three incidents on which Defendant's three CSCM convictions were based. The testimony of Detective Murray and Dr. Gagan was therefore cumulative of J.G.'s testimony and its admission fails to establish prejudice. *See State v. Hamilton*, 2000-NMCA-063, ¶ 18, 129 N.M. 321, 6 P.3d 1043 (holding that erroneous admission of uncharged conduct was harmless error and not prejudicial when the evidence was cumulative). Defendant points out that the testimony regarding the SANE interview was crucial to the State's CSPM and attempted CSPM charges

because J.G. did not reveal any conduct involving penetration in her testimony. Indeed, the State conceded that it was relying on only the substantive evidence from Dr. Gagan's testimony and Detective Murray's testimony for the CSPM and attempted CSPM charges in closing argument and in response to Defendant's motion for a directed verdict. However, the jury acquitted Defendant of both the CSPM charge and the attempted CSPM charge, and Defendant has therefore failed to show that the admission of the testimony regarding J.G.'s statements during the SANE interview could have reasonably altered the jury's verdict. *See State v. Bernal*, 2006-NMSC-050, ¶ 32, 140 N.M. 644, 146 P.3d 289 ("A defendant must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (internal quotation marks and citation omitted)). Defendant did not receive ineffective assistance of counsel when trial counsel did not move to exclude J.G.'s statements to Tucker during the SANE interview.

**Lesser-Included-Offense Instruction**

Defendant argues that trial counsel's failure to proffer a jury instruction for false imprisonment as a lesser-included offense of kidnapping constituted ineffective assistance of counsel. Defendant contends that the evidence presented at trial reasonably supported a lesser-included-offense instruction for false imprisonment, and, because a defendant has a right to a lesser-included-offense instruction when the

11

evidence reasonably supports an offense lesser in severity than the crime charged, the failure of trial counsel to request the instruction is ineffective assistance of counsel. Generally, a criminal defendant has a right to receive a jury instruction on a lesser-included offense when there is some evidence to support the instruction. *State v. Curley*, 1997-NMCA-038, ¶ 5, 123 N.M. 295, 939 P.2d 1103. In order to be entitled to the lesser-included-offense instruction, "[t]here must be some view of the evidence pursuant to which the lesser offense is the highest degree of crime committed, and that view must be reasonable." *Id.*

Our Supreme Court has recognized that a decision of whether to seek a lesser-included-offense instruction is generally one of trial tactics. *State v. Boeglin*, 105 N.M. 247, 249-50, 731 P.2d 943, 945-46 (1987). Although Defendant agrees, Defendant argues that this is a case in which "there is no excuse for not seeking a jury instruction. However, the case that Defendant relies on, *State v. Talley*, 103 N.M. 33, 702 P.2d 353 (Ct. App. 1985), is distinguishable. In *Talley*, this Court reversed the defendant's conviction for two counts of burglary, one count of larceny, and one count of arson, because the defendant's trial counsel was ineffective. *Id.* at 35, 702 P.2d at 355. The charges arose out of an incident in which the defendant and another individual removed items from a residence and the defendant set fire to the residence to eliminate potential fingerprints after drinking five to twelve pitchers of beer. *Id.*

12

The defendant's only witness at trial was a mental health professional who testified that the defendant suffered from pyromania and that the disorder is exacerbated by drinking. *Id.* This Court reversed the defendant's convictions based on the cumulative effect of counsel's failure to properly tender three jury instructions, which ultimately prejudiced the defendant's defense that, due to his mental disorder, he lacked specific intent during the commission of the alleged crimes. *Id.* at 38, 702 P.2d at 358. In this case, Defendant maintained that nothing happened between J.G. and him and that the incidents leading to the charges did not occur. Defendant never argued or presented testimony that his actions could only lead to a conviction for the lesser offense of false imprisonment, and he therefore was not denied a defense by counsel's failure to tender a lesser-included-offense instruction for false imprisonment.

This case is similar to *State v. Jensen*, 2005-NMCA-113, 138 N.M. 254, 118 P.3d 762. In *Jensen*, the defendant argued that his trial counsel was ineffective for failing to tender an instruction for third degree criminal sexual penetration (CSP), which he argued was a lesser-included offense of the charge the jury convicted the defendant of, second degree CSP. *Id.* ¶ 11. This Court rejected the defendant's claim, holding that the record failed to establish that the failure of counsel to request the third degree CSP instruction because it was conceivable that trial counsel, as a matter of

13

strategy, elected an "all-or-nothing" strategy, and no evidence existed that counsel "acted in derogation of his client's wishes or right to have a lesser included offense instruction." *Id.* ¶ 13 (internal quotation marks and citation omitted). Although Defendant argues that "there [is] no tactical reason to forego an instruction on false imprisonment," here, as in *Jensen*, Defendant "offers no persuasive argument that eliminates any conceivable and viable strategy or tactic, that shows his [counsel] fell below that of a reasonably competent attorney, or that shows prejudice." *Id.* ¶ 14. Defense counsel could have conceivably been using an all-or-nothing defense strategy by not offering the instruction for false imprisonment. Therefore, Defendant did not receive ineffective assistance of counsel due to counsel's failure to proffer a jury instruction on the lesser-included offense of false imprisonment.

**Conclusion**

Defendant has not made a prima facie showing of ineffective assistance of counsel on the record on appeal. Nothing precludes him, however, from filing a petition for habeas corpus raising an ineffective assistance of counsel claim. *See State v. Baca*, 1997-NMSC-059, ¶ 38, 124 N.M. 333, 950 P.2d 776 (stating that the defendant's failure to make a prima facie showing of ineffective assistance of counsel is not intended to preclude the defendant from seeking relief through habeas corpus).

## EVIDENTIARY ISSUES

### Standard of Review

"We review the admission of evidence under an abuse of discretion standard." *State v. Sarracino*, 1998-NMSC-022, ¶ 20, 125 N.M. 511, 964 P.2d 72. An abuse of discretion occurs when the district court's decision is clearly against the logic and effect of the facts and circumstances of the case. *State v. Lucero,* 98 N.M. 311, 314, 648 P.2d 350, 353 (Ct. App. 1982). "A [district] court abuses its discretion when it exercises its discretion based on a misunderstanding of the law." *State v. Barr*, 2009-NMSC-024, ¶ 29, 146 N.M. 301, 210 P.3d 198, *overruled on other grounds by State v. Tollardo*, 2012-NMSC-008, 275 P.3d 110.

### Hearsay Statements to SANE Nurse

Defendant argues that the district court erred in admitting hearsay statements made by J.G.'s father (Father) to the SANE nurse. The statement at issue was testimony regarding a "behavioral assessment" that Father filled out before J.G.'s SANE interview and examination. The behavioral assessment required that Father complete a form describing behavioral changes and medical history of J.G. Defense counsel objected, arguing that Rule 11-803(4)'s exception for statements made for purposes of medical diagnosis and treatment did not apply because the statement was made by a third party and not the patient. The district court overruled the objection,

ruling that the medical diagnosis and treatment exception is not limited to the patient's statements. Subsequently, Dr. Gagan testified that, in the behavioral assessment, Father revealed that J.G. seemed withdrawn and more aggressive in the months following the alleged sexual contact and "that these behaviors had seemed to have improved after the person that supposedly had molested her was incarcerated." Father also testified at trial that J.G. became mistrustful and withdrawn after the alleged incidents with Defendant.

Defendant relies on *State v. Tafoya*, 2010-NMCA-010, 147 N.M. 602, 227 P.3d 92, for the proposition that law enforcement instigated the SANE examination, making the examination primarily for law enforcement purposes, and, therefore, the testimony was inadmissible under the medical diagnosis and treatment exception. However, as we discussed, our Supreme Court has since decided *Mendez* and determined that the forensic nature of SANE examinations and law enforcement presence do not automatically bar admission under the medical diagnosis and treatment exception. *Mendez*, 2010-NMSC-044, ¶ 41-43, 52-54. Instead, a district court must "sift[] through statements, piece-by-piece, making individual decisions on each one . . . to evaluate the trustworthiness of each . . . statement[], taking into consideration [the] help-seeking motivation and the pertinence of such statements to medical diagnosis or treatment." *Id.* ¶ 46.

16

Dr. Gagan testified that the behavioral assessment is part of the medical history of the child and that the history is an important part of assessing the child for the subsequent medical examination.  Defendant does not point to any testimony that Father's statement in the behavioral assessment was for any purpose other than to assist in diagnosing and treating J.G.  Applying *Mendez*, 2010-NMSC-004, ¶ 46, the district court did not abuse its discretion in allowing testimony regarding the behavioral assessment filled out by Father under the medical diagnosis and treatment exception.

**Defendant's Prior Plea**

Defendant next argues that the district court's "unforeseeable and unwarranted" change of position in deciding to admit into evidence Defendant's prior statement made during a plea allocution deprived Defendant of a defense and unfairly prejudiced him in front of the jury.  Initially, the charges against Defendant arose out of an investigation conducted after the State was already investigating similar allegations made against Defendant by J.G.'s cousin.  Defendant pled guilty in the case involving J.G.'s cousin.  In this case, the district court ruled in limine that the State could not elicit any testimony regarding "the extent of the nature [of the prior allegations involving J.G.'s cousin], and the fact that a conviction was obtained[.]" Without citation to the record, Defendant contends that the State obtained a copy of

Defendant's plea allocution at his sentencing in the case involving J.G.'s cousin. At the plea allocution, Defendant revealed that he could not remember any events involving J.G.'s cousin because he was too drunk.

In this case, on cross-examination, the following exchange took place:

[State:]      Have you ever been so intoxicated that you didn't know what you were doing?

[Defendant:]      No.

[State:]      Never. And you have never said that in a court of law?

. . . .

[State:]      Have you ever said, in a court proceeding like this, to a judge, like this judge, that, I must have been drunk; I didn't know what I was doing?

[Defendant:]      No.

Defendant contends that the district court abused its discretion by allowing the State to pursue this line of questioning because it "infringed upon his opportunity to challenge jurors who may have been unable to impartially judge the facts of the case." *See State v. Glasgow*, 2000-NMCA-076, ¶¶ 18-20, 129 N.M. 480, 10 P.3d 159 (holding that the district court's change of position regarding the admissibility of the defendant's prior cocaine use was unfairly prejudicial to the defendant because the defendant was unable to voir dire the jurors regarding drug use), *overruled on other*

18

*grounds by Tollardo*, 2012-NMSC-008; *see also State v. Balderama*, 2004-NMSC-008, ¶¶ 18, 44, 135 N.M. 329, 88 P.3d 845 (holding that the timing of the district court's exclusion of expert testimony was prejudicial because the defendant had already referenced the anticipated testimony and identified the witness by name). Defendant likewise argues that, in this case, he was prejudiced because he did not conduct voir dire "concerning the possibility that jurors would be unduly swayed by knowledge that [Defendant] had been convicted in another case" and because Defendant was entitled "to rely on judicial rulings . . . in planning his defense strategy and in summarizing that strategy to the jury."

However, Defendant mischaracterizes the testimony at issue. The questioning did not reference the previous allegations by J.G.'s cousin or anything regarding the plea or conviction. From the scant exchange at issue, the jury could not even glean that Defendant had previously testified in a criminal case because Defendant answered the State's question in the negative. Although the State may have come close to eliciting testimony regarding the "extent of the nature of the [prior allegations], and the fact that a conviction was obtained," the testimony did not reach the scope of the earlier ruling by the district court. It was not prejudicial to Defendant that he did not voir dire potential jurors on whether they would be unduly swayed by knowledge of Defendant's prior conviction in another case because the jury never heard testimony

19

regarding Defendant's prior conviction.

Furthermore, Defendant's argument that "[t]he jury may have drawn any number of prejudicial conclusions from the fact that the defense did no[t] further address the substance of the State's question[ing,]" is purely speculative and fails to establish actual prejudice. *See State v. Montoya*, 2011-NMCA-074, ¶ 13, 150 N.M. 415, 259 P.3d 820 ("An assertion of prejudice is not a showing of prejudice." (internal quotation marks and citation omitted)). Likewise, to the extent that Defendant argues that the testimony made any potential avenues of defense unavailable to Defendant, he fails to provide any specific examples of how the testimony affected his defense strategy or precluded a specific defense to the allegations.

**PROSECUTORIAL MISCONDUCT**

Pursuant to *State v. Franklin*, 78 N.M. 127, 428 P.2d 982 (1967) and *State v. Boyer*, 103 N.M. 655, 712 P.2d 1 (Ct. App. 1985), Defendant argues that prosecutorial misconduct deprived him of a fair trial. Defendant points to five instances of alleged prosecutorial misconduct: the prosecutor (1) alluded in her closing argument to a statement made by J.G. that had not been received in evidence, (2) threatened sanctions against defense counsel, (3) failed to disclose a statement made by Defendant, (4) vouched for a State's witness in her closing argument, and (5) commented on Defendant invoking his right to silence in her closing argument.

20

Normally, "in reviewing claims of prosecutorial misconduct, we determine whether the [district] court abused its discretion by denying a motion for a new trial based upon the prosecutor's conduct, by overruling the defendant's objection to the challenged conduct, or by otherwise failing to control the conduct of counsel during trial. The [district] court's determination of these questions will not be disturbed unless its ruling is arbitrary, capricious, or beyond reason." *State v. Loya*, 2011-NMCA-077, ¶ 13, 150 N.M. 373, 258 P.3d 1165 (internal quotation marks and citation omitted). "Our ultimate determination . . . rests on whether the prosecutor's improprieties had such a persuasive and prejudicial effect on the jury's verdict that the defendant was deprived of a fair trial." *State v. Duffy*, 1998-NMSC-014, ¶ 46, 126 N.M. 132, 967 P.2d 807, *overruled on other grounds by Tollardo*, 2012-NMSC-008. However, with the exception of Defendant's first alleged instance of prosecutorial misconduct, Defendant did not object to the other four instances or file a motion for mistrial and therefore did not preserve his other four prosecutorial misconduct arguments. We therefore review Defendant's last four arguments for fundamental error. *See State v. Allen*, 2000-NMSC-002, ¶ 95, 128 N.M. 482, 994 P.2d 728 ("When the [district] court had no opportunity to rule on a claim of prosecutorial misconduct because the defendant did not object in a timely manner, we review the claim on appeal for fundamental error."). "Prosecutorial misconduct rises to the level of

fundamental error when it is so egregious and had such a persuasive and prejudicial effect on the jury's verdict that the defendant was deprived of a fair trial." *Id.* (internal quotation marks and citation omitted).

We first address Defendant's first argument under an abuse of discretion standard. *See Loya*, 2011-NMCA-077, ¶ 13. During her rebuttal argument, the prosecutor told the jury that J.G. provided a pretrial statement that Defendant "took [her] to the back room and tied [her] hands behind [her] head to a chair." After Defendant objected, the district court agreed that the statement was not part of the evidence and that the prosecutor improperly mentioned it. The district court then instructed the jury to disregard the statement. Under these circumstances, the statement is not prosecutorial misconduct. It was a single statement that merely mirrored J.G.'s testimony. The prosecutor did not provide any new information to the jury but instead just gave the wrong source. This single, isolated statement did not deprive Defendant of a fair trial. *See Allen*, 2000-NMSC-002, ¶ 95 (stating that a single, isolated incident of prosecutorial misconduct is not reversible error). Further, any prejudice that Defendant may have suffered from the comment was cured by the district court's instruction to the jury to disregard the statement. *State v. Otto*, 2007-NMSC-012, ¶ 17, 141 N.M. 443, 157 P.3d 8 (stating that a jury is presumed to follow limiting instructions).

We next review Defendant's four unpreserved arguments under a fundamental error standard of review. We emphasize they were unpreserved. Regarding Defendant's contention that the prosecutor threatened sanctions against his defense counsel, this argument does not bear on the jury verdict because the statement was made outside of the jury's presence during a side conference. Therefore, even if the statement was improper, it did not deprive Defendant of a fair trial. *See Allen*, 2000-NMSC-002, ¶ 95. Likewise, regarding Defendant's contention that the prosecutor's failure to disclose Defendant's statement at the plea allocution even though the prosecutor intended to use it to impeach Defendant during trial is not prosecutorial misconduct because the statement never was admitted at trial and therefore was not prejudicial to Defendant. As we previously discussed, the State did not ultimately use Defendant's prior statement during the plea allocution to impeach Defendant and therefore the jury never heard any testimony or argument regarding the statement. *See State v. Rivera*, 2009-NMCA-132, ¶ 43, 147 N.M. 406, 223 P.3d 951 (rejecting a prosecutorial misconduct claim based on a failure to disclose bank statements because the defendant failed to show that it prejudiced his defense).

Defendant next contends that the prosecutor improperly vouched for Dr. Gagan's testimony in closing argument by stating that, although Dr. Gagan did not personally take J.G.'s history, "[t]his is very common for [Dr. Gagan] to testify for

23

SANE nurses." Defendant contends that this statement impermissibly derived from facts not in the record. However, Dr. Gagan testified that it is "common" practice for her to testify on behalf of the SANE nurse that conducted the examination. The prosecutor merely restated the evidence presented at trial, and therefore there was no prosecutorial misconduct based on the statement.

Lastly, Defendant argues that the prosecutor made an impermissible comment on Defendant's right to silence during the State's closing argument. During closing argument, the prosecutor addressed

> [t]he chlamydia thing. You know, it's unfortunate that [Detective] Murray wasn't able to get a sample from . . . [D]efendant when he went to see him. And it's unfortunate that he wasn't able to get a search warrant. But that's just one little piece of evidence.

Considered in the context of the testimony at trial, this statement during closing argument was not an impermissible comment on Defendant's silence. Prior to Detective Murray's testimony, the district court ruled that Detective Murray could testify that he attempted to obtain a search warrant to test Defendant for chlamydia after Defendant refused to be tested while in custody. It determined that Defendant had opened the door to such testimony by stating in his opening argument that there were no efforts to find out whether Defendant had chlamydia. Accordingly, Detective Murray testified that he did not obtain a search warrant because the police department

24

did not have anyone on contract to take a blood draw of Defendant. The prosecutor did not comment on Defendant's right to silence and instead summarized the evidence that the investigators were unable to obtain a chlamydia test on Defendant. Additionally, as the district court correctly observed and applied, "it is . . . the rule that the prosecution may refer to the defendant's failure to testify if the door is opened by the defense." *State v. Henry*, 101 N.M. 266, 267, 681 P.2d 51, 52 (1984). Defendant does not argue that the district court erred in determining that Defendant opened the door to Detective Murray's testimony regarding the chlamydia test by arguing that there was no effort by investigators to determine whether Defendant had chlamydia. The prosecutor's comment in this instance was not prosecutorial misconduct.

**CUMULATIVE ERROR**

Lastly, Defendant argues that cumulative error deprived Defendant of a fair trial. *See State v. Garvin*, 2005-NMCA-107, ¶ 14, 138 N.M. 164, 117 P.3d 970 ("Under the doctrine of cumulative error, we must reverse a conviction when the cumulative impact of errors that occurred at trial was so prejudicial that the defendant was deprived of a fair trial." (alterations, internal quotation marks, and citation omitted)). However, because we have held that there was no error, the doctrine of cumulative error does not apply. *See State v. Aragon*, 1999-NMCA-060, ¶ 19, 127 N.M. 393, 981 P.2d 1211 (holding that when there is no error, "there is no cumulative

25

error").

**CONCLUSION**

For the foregoing reasons, we affirm Defendant's convictions.

**IT IS SO ORDERED.**

_____
**JAMES J. WECHSLER, Judge**

**WE CONCUR:**

_____
**JONATHAN B. SUTIN, Judge**

_____
**RODERICK T. KENNEDY, Judge**